THOS. L. JONES ET AL. *v.* NEWPORT & LICKING TPK. R. CO.

**Power of Corporation to Prescribe the Terms of Disposition of New Stock.**

> The original stockholders in a turnpike corporation, having paid for their stock and being the owners of the property and franchises of the company, by their board of directors, have the power to prescribe the terms upon which others may become jointly interested and the price at which new stock issued may be purchased.

**Legality of Stock Issued by Corporation.**

> Where the original stockholders in a turnpike company are the owners of all the stock issued and have paid for the same and completed their road, but at no time during many years thereafter have received any dividends or interest on their investment, they may by resolution authorize the issue of additional stock to themselves to the amount of the tolls collected during such years, and those thereafter becoming the owners of additional stock by new directors have not the power to cancel the additional stock issued to the original stockholders. The issue of such stock was valid.

APPEAL FROM CAMPBELL CHANCERY COURT.

December 7, 1882.

OPINION BY JUDGE LEWIS:

The parties to this appeal, as provided by Civ. Code (1876), § 637, stated the questions and facts upon which it depends, and presented the submission thereof to the court having jurisdiction. The appellants, who are called plaintiffs below, prayed that the

stock about which the controversy arises be declared good and binding upon the company and the defendants. Appellees, called defendants, prayed that said stock be declared invalid and not binding upon them, or either of them, and that it be annulled and cancelled.

The question presented by each party in the form of a prayer for judgment of the court is simply whether the stock mentioned is valid or invalid. From the agreed state of facts it appears that in the year 1852 the company, being organized, commenced to build their road and completed three miles thereof in 1856, and that stock was subscribed, paid and issued for that work to the amount of about $10,600.

September 14, 1867, the following resolutions were passed as shown by the records of the company: "Resolved that the present stockholders, having put in their money many years ago, and with it built the present road from which they have received no returns except what has been expended in repairing and perfecting said road, and no dividends having as yet been allowed said stockholders, that said present stockholders be allowed, and there is hereby assigned to them in lieu of dividends an additional amount of paid-up stock to the amount of the aggregate of the tolls received by the company, said stock to be apportioned, dis- tributed and issued to the present stockholders according to the amount of stock now held by them respectively. Resolved that books be opened for subscription to the stock of the company to extend the road, to be taken as new stock, and that Charles New- nam be and he is hereby appointed a committee to superintend the same, also with power to receive subscription of the rights of way," etc.

August 6, 1869, a resolution was passed authorizing a committee to adjust the per cent. of stock that the old stockholders were entitled to, with full power to act on the subject, and that the per cent. of stock due the old stockholders to make them equal with the new ones be fixed and issued to said stockholders. Au- gust 27, 1869, the committee made a report showing the amount received and expended on the road to January, 1870, and upon that basis recommended that a dividend of at least 100 per cent. be de- clared to the old stockholders, and that Thos. L. Jones should receive an additional amount equal to $506.20 in settlement of his accounts. Therefore, it was resolved unanimously that additional

stock be issued to the holders of old stock in proportion to the amount that the tolls upon the old part of the road has to the old stock paid. It was also resolved that the president, secretary and treasurer prepare and execute certificates of stock to the holders of the old stock according to the terms fixed upon by said committee; and stock was thus issued to the old stockholders to the amount of double what they held before. It further appears that in February, 1881, more than thirteen years after the adoption of the resolution by the old board of September 14, 1867, and more than eleven years after the stock was actually issued, the present directors passed in regard thereto the following resolution: "Resolved that all such certificates of stock be and the same are considered unauthorized and void and the issuing thereof in nowise binding, and this company will so regard and treat the same," and from the passage of that resolution has grown the present controversy. It does not appear nor does counsel contend that the issue of stock under the resolution of September 14, 1867, was itself unjust or unequal. On the contrary, it is manifest that it would have been palpable injustice and inequality to have permitted the new subscribers of stock to have the same number of shares as the old stockholders who had subscribed and paid for their stock sixteen or seventeen years before, without having received anything in dividends or interest.

Nor is it contended that the issue of the additional stock was made fraudulently or without notice to the new stockholders, so far from it that at the same time the resolution authorizing books to be opened for new subscriptions of stock was passed, viz.: September 14, 1867, it was also resolved that in lieu of dividends an additional amount of paid-up stock to the amount of the aggregate of the tolls received by the company should be assigned to the original stockholders.

It appears that one of the appellants in this case, J. W. Schneider, purchased a considerable amount of the dividend stock after it was issued under the resolution of September 14, 1867, and now holds it. The other appellant, T. L. Jones, holds some of the dividend stock issued to him upon a settlement of his accounts, or in the language of the court below, "to satisfy a liability of the company to him" as one of the original stockholders; and also a large amount of the persons who are appellees in this suit, among them T. B. Youtsey, H. M. Healy, purchased a large portion of

the original stock, and James L. Gray is one of the new subscribers of stock.

As to the dividend stock issued to the appellant, Jones, in consideration of his services, it was adjudged valid by the court below, and no complaint is made of that judgment by counsel for the appellees. Appellant, Schneider, purchased the dividend stock now held by him upon the faith of the resolution authorizing its issue to its vendors, acquiesced in and upheld without objection by the new subscribers of stock for more than thirteen years. To permit the present board of directors, composed of and representing the new stockholders under such circumstances, to cancel and annul the dividend stock thus acquired and held by appellant, Schneider, would be contrary to every principle of justice and equity. On the other hand, neither of the appellees, Youtsey and Healy, purchasers of the original stock, or Gray, one of the new subscribers of stock, show or pretend that the dividend stock was issued to or purchased by them without notice, or that they were in any way defrauded. Unless, therefore, there is to be found in the act of incorporation, or amendments thereto, some provision prohibiting the issue of the dividend, or so-called dividend stock in the manner it was done, it is difficult to perceive upon what ground it is to be adjudged invalid, and the stock itself in the hands of innocent purchasers and holders a nullity.

In 1867, when it was resolved to open books for additional or new subscriptions of stock, the company was completely and legally organized and had been since 1852. The stockholders were the owners and in the full possession of all the rights. and franchises conferred by the charter, as well as the property acquired by the expenditure of money subscribed and paid up by them years before. The company composed of and representing its stockholders was as completely the owner of all the franchises and property thus held as a person could be of property legally acquired by him. It is not nor can it be denied that the company thus organized possessed the right to issue stock towards the construction of the road, or in payment for services rendered by its contractors, agents or employes. But the right to thus issue stock presupposes the necessary power to fix the price at which to thus dispose of it. The company also had its election to open books for additional or new stock, or, in other words, to permit other persons to become

members of the corporation and joint owners of the property and franchises or not.

Therefore it necessarily follows that if other persons could not, without the consent of the original stockholders, subscribe for stock and become members of the corporation, the original stockholders certainly had the power to prescribe the terms upon which they might do so. So they had the right, before permitting others to become joint owners of their corporate franchises and property, to fix the value thereof and prescribe such terms as would secure equality and prevent injury and injustice to themselves. They made it a condition on which new stock might be issued that the original stockholders should be upon an equal footing with the new ones. They might have accomplished that object by requiring the subscribers or purchasers of new stock to pay double the face value of the stock. They had as much right to do so, as an independent owner of property has to fix the price and terms upon which he will sell the whole or part of it. But instead of adopting that mode of securing equality they chose to accomplish the same object by doubling their own stock, which is no more objectionable or illegal than the other mode. The interest or dividends upon this subscription of stock paid up years before had been applied to extending and keeping the road in repair. To remunerate themselves therefor stock was issued to an amount equal to the tolls collected and thus applied.

To say that the original stockholders, though the absolute owners of the property and franchises of the company, and legally invested with the control of it by their board of directors, still could not prescribe the terms upon which others might become jointly interested, is to put a useless and unjust restraint upon corporations. In our opinion there is no provision in the act of incorporation or amendatory acts which directly or by implication prohibits the issue of the dividend stock in the manner it was done. Acts 1850-51, Ch. 625.

Though the capital stock was by the original act limited to $25,000, the company was subsequently, by an act passed in 1853 (Acts 1853-54, Ch. 29), empowered to increase their capital stock to such an amount as they might find necessary for the completion of the road. Counsel for appellee in his petition for rehearing refers to the 6th section of the act of incorporation and contends that it in effect provides that all stock shall be paid for in full.

That section is as follows: "That the president and directors, after their election, shall make a call upon the different stockholders for payment upon their several subscriptions, which call shall be made in such manner as they shall deem right and just: Provided, that the first call shall not be over twenty per centum on the amount subscribed, and may be less, in the discretion of said directors: And, provided further, that all subscribers paying as much as twenty per centum, as aforesaid, at the first payment or call, shall be entitled to a notice of forty days upon any subsequent call."

Even if that section be subject to the construction put upon it by counsel it has no reference to the action of the company after it is once organized and the stock is fully paid up, as is the case here. Nor can it be construed as prohibiting the issue of stock to the original stockholders in the manner it was done in this case. The object of the section was to prevent fictitious subscriptions of stock and a fraudulent organization of the company, and to give power to the directors to coerce the payment of stock subscribed. But even if it could be construed to apply to this case, the original stockholders to whom the dividend stock was issued have in reality as fairly and fully paid for such stock as the new stockholders have paid up the amount subscribed by them.

In our opinion the issue of the stock under the resolution of September 14, 1867, is not prohibited by the acts of the legislature, nor in any respect illegal or unjust, but is valid, and being so the resolution adopted by the board of directors in 1881 was illegal and is void. Judgment *reversed*.

*Dissenting opinion by Judge Hargis.*

The agreed facts do not show that the purchasers of new stock knew at the time they purchased that the old stockholders had voted themselves double the amount of their stock; hence the new stockholders are not estopped to controvert the right of the appellants to the increase of stock for which they never paid anything, if indeed the appellants under any state of case could double their stock unless authorized by the charter to do so.

It is contended by the appellants that they had expended the dividends arising from their original stock in keeping the road in repair, and that the use of the dividends furnished a valuable consideration for the increase of their stock to $200 in amount for

each $100 of stock which they had originally subscribed. This position can not be supported because what the appellants denominate as dividends do not constitute dividends.

It took all the receipts of the fragment of road which the old stockholders had constructed to keep it in repair and from going to destruction; hence there could not have been any dividends, as dividends can only be declared after all expenses incurred in the necessary and proper repair of the road and its management are paid. Therefore, the act of the old stockholders in doubling their stock has no good or valuable consideration to support it, and it is clearly a case of the unauthorized watering of stock under circumstances of hardship.

The most plausible arguments or the worst returns of an ill-advised venture should never be permitted to justify the watering of stock, which is a power so easily wielded by the majority that the minority may be virtually deprived of their stock; and it is to be hoped that uncontrolled increase of stock by its holders without a valuable consideration therefor paid to the corporation will not be sanctioned by a precedent.

The capital of the company is limited by the charter to $25,000 to build a road more than twice as long as the portion completed by the old stockholders. If, therefore, they can increase their stock from $10,600 to $21,200 they will have swelled the stock to a sum greatly beyond the capital stock allowed by the company's charter if the remainder of the cost of the road is as much as the completed portion, and the amendment to the charter authorizing the increase of the capital stock to such amount as they may find necessary for the completion of said road does not authorize the company to double its old stock and then issue new stock in addition sufficient to finish the road. If such were the meaning of the amendment there would be no limit to the capital stock of this company, whose members might double or increase their shares many fold and still lack means to finish the road.

Besides, it seems no set of stockholders, even if every one of them agrees to it, can double or issue stock in any manner not authorized by the charter of the corporation of which they are members. The reason for this rule is that the corporation derives all its power from the legislative grant, and can exercise none other, the public being entitled to protection against trading with or being subjected to the exercise of extraordinary powers by

the corporation, whose stock may thus be made to represent capital which the corporation does not have or own in fact, and which the legislature never intended to be done. For these reasons the judgment should, in my opinion, be *affirmed*.

O'*Hara & Bryan, for appellants.*

*William Lindsay, James B. Wright, for appellee.*

[See *Jones v. Newport & L. Tpk. R. Co.,* p. 698, this volume.]